THE UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Mound Road Realty Venture, LLC, | ) | Case No. 11-_____ |
| | ) | |
| Debtor. | ) | |
| | ) | |

## DECLARATION OF DAVID JANKOWSKI IN SUPORT OF CHAPTER 11 PETITION AND FIRST DAY CASH COLLATERAL MOTION

David Jankowski, D.O., hereby declares (the "Declaration"), pursuant to 28 U.S.C. § 1746, as follows:

1. I am the Manager of Mound Road Realty Venture, LLC ("Mound Road Realty" or the "Debtor"), a limited liability company organized under the laws of the State of Michigan. I am authorized to submit this Declaration on behalf of the Debtor. As a result of my tenure with the Debtor, my review of documents, and my discussions with others, I am familiar with the Debtor's day-to-day operations, business affairs, and books and records. Except as otherwise noted, I have personal knowledge of the matters set forth in this Declaration and, if called as a witness, I could testify competently to such matters.

2. On the date hereof (the "Petition Date"), the Debtor filed a petition for relief under chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101-1330, as amended (the "Bankruptcy Code"), in the United States Bankruptcy Court for the Eastern District of Michigan. The Debtor intends to continue to maintain possession of its property and to manage its business as a debtor-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code. Further, to enable it to minimize the adverse effects of the chapter 11 filings on its

1

business, the Debtor intends to request relief in a "first day" cash collateral motion (the "Cash Collateral Motion").

3. I am advised by counsel that this Court has jurisdiction over this chapter 11 case pursuant to 28 U.S.C. §§ 157 and 1334 and venue is proper in the United States Bankruptcy Court for the Eastern District of Michigan pursuant to 28 U.S.C. §§ 1408 and 1409.

4. No request for appointment of a chapter 11 trustee or examiner has been made and, as of the date hereof, no official committee has been appointed.

5. I submit this Declaration in support of the Debtor's chapter 11 petition and the Cash Collateral Motion. Part I of this Declaration describes the Debtor's business and the circumstances surrounding the commencement of its chapter 11 case. Part II of this Declaration sets forth the relevant facts in support of the Cash Collateral Motion filed concurrently herewith. Part III of this Declaration summarizes the Debtor's objectives in this chapter 11 case.

## Part I. BACKGROUND

### Current Business Operations of The Debtors

6. The Debtor owns and operates a 62,809 square foot commercial space located at 28241 Mound Road in Warren, Michigan (the "Property"). The Debtor leases and collects rents from its tenants CORT Furniture Rental, Central Michigan University, and Mylocker.com.

7. The Debtor is owned by nine members, which are listed on the Debtor's chapter 11 petition or related documents.

8. The Debtor was formed in 2002.

9. The Debtor has no employees. The Property is managed by Janko Properties, located in Farmington Hills, Michigan. Janko Properties is generally responsible for the daily management, operation, maintenance, leasing, supervision and repair of the Property, subject to

2

11-63532-tjt    Doc 4    Filed 09/01/11    Entered 09/01/11 15:57:25    Page 2 of 6

the Debtor's direction. I am the Debtor's part owner, managing member and owner of Janko Properties.

**The Debtor's Secured Debt**

10. On April 15, 2008, the Debtor and Citizens First Savings Bank a/k/a CF Bankcorp, Inc. ("Citizens") whose address was 525 Water Street, P.O. Box 5012, Port Huron, Michigan 48061, entered into a Combined Construction and End Loan Agreement (the "Loan Agreement") whereby Citizens loaned funds (the "Loan") to the Debtor in the principal amount of $4,050,000 for the purpose of refinancing an existing loan and expanding the Property.

11. The Loan Agreement is evidenced by a Mortgage Note (the "Note") dated April 15, 2008.

12. The Loan is secured by a first mortgage (the "Mortgage") on the Property, and an assignment of leases and rents (the "Rent Assignment") dated April 15, 2008 (the Property and the Rent Assignment collectively known as the "Collateral") (the Loan Agreement, the Note, the Mortgage, and the Rent Assignment, collectively referred to as the "Loan Documents").

13. On Friday, April 30, 2010, Citizens was closed by the Michigan Department of Financial and Insurance Regulation, and the Federal Deposit Insurance Corporation (FDIC) was named Receiver. Thereafter, the Loan was held by First Michigan Bank, which is now known as Talmer Bank & Trust ("Talmer").

**Events Leading to the Chapter 11 Bankruptcy**

14. In September 2010, the Debtor received a letter from First Michigan Bank alleging that Debtor was in default under the Loan. Thereafter, on May 9, 2011, the Debtor received a letter from Talmer's counsel alleging that Debtor was in default under the Loan and demanding payment in full. Also on May 9, 2011, Talmer's counsel sent correspondence to

3

tenants of the Property informing them that the Debtor was in default under the Loan, and directing them to pay all rents to Talmer. Tenants were also sent a Notice of Default on May 9, 2011, informing them of the Debtor's alleged default under the Loan. Talmer recorded the Notice of Default with the Macomb County Register of Deeds on June 3, 2011. Upon information and belief, Talmer collected June, July and August rents from the tenants.

15. As of the Petition Date, according to Talmer the principal amount of the Loan, plus accrued interest, was approximately $4,250,000.

### Part II. Cash Collateral Motion

16. Contemporaneous with the filing of its Chapter 11 bankruptcy, the Debtor expects to file the Cash Collateral Motion and respectfully requests that the Court consider entering an order granting the Cash Collateral Motion. I am familiar with the relief requested in the Cash Collateral Motion and attest to the truth of the facts set forth therein. Moreover, I believe that the relief sought in the Cash Collateral Motion (a) is vital to enable the Debtor to make the transition to, and operate in, chapter 11 with a minimum of interruption or disruption to its business or loss of productivity or value; and (b) constitutes a critical element in preserving the value of the Debtor's estate.

17. By the Cash Collateral Motion, the Debtor seeks entry of an interim and final order authorizing the Debtor to, among other things, (i) obtain authorized use of cash collateral pursuant to sections 363 and 361 of the Bankruptcy Code, Federal Rule of Bankruptcy Procedure 4001(b), and L.B.R. 4001-2 (E.D.M.) on an interim basis in the amounts set forth in the Budget attached to the Cash Collateral Motion and; (ii) grant adequate protection pursuant to sections 361, 362, 363, 364, and 507 of the Bankruptcy Code to Talmer.

18. The Debtor requires the ability to immediately pay for, among other things, the operation of the Debtor's building, and resume paying for ordinary, post-petition operating expenses, to maximize value for all stakeholders.

19. Absent immediate use of Cash Collateral for its continuing business operations, the Debtor will be unable to pay operating expenses and, therefore, unable to continue to conduct its business pending the Final Hearing on the Cash Collateral Motion. Consequently, if interim relief is not obtained, the Debtor's case will be immediately and irreparably jeopardized, to the detriment of its estate, creditors, and other parties in interest.

20. Without the ability to make the payments as set forth in the Budget (as defined in the Cash Collateral Motion), the Debtor would be unable to ensure the continued operation and management of the Property. A substantial portion of the value of the Property arises from the current tenant leases (the "Leases"), which in turn depends on the continuance of ongoing operations.

21. Based upon the Budget, the Debtor expects to remain profitable and will thereby be able to provide Talmer with adequate protection of its interests in the Debtor's Cash Collateral. Furthermore, multiple appraisals obtained by the Debtor demonstrate that the appraised value of the property exceeds the amount of secured debt owed by the Debtor by a substantial amount.

## **PART III. OBJECTIVES**

22. The Debtor intends to maximize value for the benefit of all stakeholders. The Debtor is pursuing the reorganization of its business in an effort to preserve and protect the value of its estate.

I SWEAR UNDER PENATLY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE.

*[signature]*
David Jankowski, D.O.
Manager
Mound Road Realty Ventures, LLC

Dated: *Aug. 31*, 2011

6